Scott Leslie **CARMELL, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–97–197–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 17, 2000.

Rehearing Overruled Sept. 21, 2000.

William Street, Denton, for Appellant.

Bruce Isaacks, Crim. Dist. Atty., Yolanda M. Joosten, Paige McCormick, Earl Dobson, Asst. Dist. Atty., Denton, for Appellee.

PANEL F: HOLMAN, J., CAYCE, C.J., and DAY, J.

### OPINION ON REMAND

PER CURIAM.

On original submission, this court held the amended version of article 38.07 applied to Appellant's case because it was a rule of procedure rather than a statute affecting the range of punishment or the elements of an offense. *See Carmell v. State,* 963 S.W.2d 833, 836 (Tex.App.—Fort Worth 1998, pet. ref'd). The Texas Court of Criminal Appeals refused Appellant's petition for discretionary review, and certiorari was granted after appeal was taken to the United States Supreme Court. *See Carmell v. Texas,* 527 U.S. 1002, 119 S.Ct. 2336, 144 L.Ed.2d 234 (1999). In *Carmell v. Texas,* — U.S. —, —, 120 S.Ct. 1620, 1643, 146 L.Ed.2d 577 (2000), the United States Supreme Court reversed this court and held Appellant's convictions on counts 7 through 10, insofar as they were not corroborated by other evidence, could not be sustained under the ex post facto clause. The Court then remanded the case to this court and ordered us to determine whether sufficient evidence existed that corroborated K.M.'s testimony as it pertained to counts 7 through 10 of the indictment. Because sufficient evidence exists to corroborate K.M.'s testimony, we affirm the trial court's judgment.

### I.

In count 7, the State alleged that on or about June 1, 1992, Appellant "did then and there intentionally and knowingly cause the sexual organ of [K.M.], a child younger than 17 years of age and not the spouse of [Appellant], to contact the sexual organ of [Appellant]." K.M. testified she and Appellant had taken a "nap" in Appellant's bedroom. She stated they removed their clothes and Appellant's erect penis touched her genital area when he pulled her on top of him. In count 8, the State alleged on or about March 1, 1993, Appellant "with intent to arouse and gratify [his] sexual desire ... [did] intentionally and knowingly engage in sexual contact with [K.M.], by touching the breast of [K.M.], a child younger than 17 years of age and not the spouse of [Appellant]." To support count 8, K.M. testified Appellant had kissed her breasts. In count 9, the State alleged on or about June 1, 1993, Appellant "did then and there, with the intent to arouse and gratify [his] sexual desire ... intentionally and knowingly engage in sexual contact with [K.M.], a child younger than 17 years of age and not the spouse of [Appellant], by causing [K.M.] to touch the genitals of [Appellant]." K.M. testified Appellant brought a condom and a vibrator upstairs and he had her rub his penis until he ejaculated. In count 10, the State alleged on or about July 1, 1993, Appellant "did then and there, with the intent to

arouse and gratify [his] sexual desire ... intentionally and knowingly engage in sexual contact with [K.M.], a child younger than 17 years of age and not the spouse of [Appellant], by causing [K.M.] to touch the genitals of [Appellant]." K.M. testified on this occasion, Appellant brought a vibrator upstairs and touched her genital area with it. Appellant also ejaculated after having K.M. touch his penis.

## II.

■ In determining if corroborating evidence exists, courts look to whether there is any evidence tending to connect the defendant with the commission of the offense. See Scoggan v. State, 799 S.W.2d 679, 681 n. 5 (Tex.Crim.App.1990). After carefully reviewing the entire record, we conclude the record is replete with evidence corroborating K.M.'s testimony.

The State presented evidence that an unnatural relationship existed between Appellant and K.M. Appellant began having "date nights," as he called them, with K.M. where they would go out to dinner, watch a movie, and sleep together in K.M.'s bed. Appellant's wife, Eleanor, actually caught Appellant and K.M. sleeping together in the nude after one of the "dates." Appellant also was obsessed with nudity and tried to convince his family that it was proper. Eleanor told the jury Appellant believed family nudity was a way to achieve unity among them. She claimed Appellant tried to have sex with her while K.M. was in bed with them and that she had witnessed Appellant kissing K.M. on the lips in a romantic manner.

Eleanor testified her relationship with Appellant began to change. She noted that the change coincided with a change in Appellant and K.M.'s relationship. For instance, Appellant started spending more time with K.M. to the point where Eleanor became jealous. Appellant seemed overly concerned with K.M.'s menstrual cycle and remarked several times that K.M. was "late." Appellant gave K.M. herbal teas to strengthen her female system and started taking baths with K.M. Eleanor also claimed that after he was arrested, Appellant admitted to her that he had committed adultery with K.M.

While the foregoing evidence tends to connect Appellant to the crimes he was charged with, the State introduced even more evidence from other people who also noticed an unnatural relationship between Appellant and K.M. Appellant's son explained Appellant and K.M. would cuddle on the couch and that Appellant would sit unnaturally close to her. Deborah Del-Cambre, one of Appellant's business associates, believed Appellant was overly affectionate with K.M. D'Vorah Hasheeve, one of Appellant's students, thought Appellant treated K.M. like a lover rather than a daughter after seeing him kiss K.M. on the lips. Petra Lackey, another student, also witnessed Appellant kiss K.M. on the lips and touch her like they were romantically involved. Lori Weaks, a patient of Appellant, claimed Appellant admitted to her that some of the allegations were true. She told the jury Appellant had called K.M. a tramp and said that K.M. "deserved what she got, that she was asking for it," and "had been teasing him for a long time." Rebecca Robinson, an employee of Cagle Bail Bonds, claimed Appellant told her that "it wasn't as if [K.M.] was an unwilling participant." And last, the State introduced numerous cards and letters expressing Appellant's deep and sincere affection towards K.M.

## III.

After carefully reviewing the record, we find sufficient corroborating evidence to connect Appellant with the crimes alleged in counts 7 through 10. We affirm the trial court's judgment.