IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 8, 2008

Charles R. Fulbruge III
Clerk

No. 06-40578

SCOTT LESLIE CARMELL

Petitioner - Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent - Appellee

Appeal from the United States District Court
for the Eastern District of Texas, Sherman
USDC No. 4:02-CV-421

Before KING, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Petitioner-appellant Scott Leslie Carmell, proceeding pro se, appeals the
district court's denial of his petition for writ of habeas corpus. Carmell argues
that his constitutional rights were violated when the Texas Court of Appeals
reaffirmed his convictions on remand from the United States Supreme Court,
and that he was denied effective assistance of appellate counsel during those
remand proceedings. With respect to his first contention, we affirm the district

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

court's denial of habeas relief. However, we conclude that Carmell's claim of ineffective assistance of appellate counsel on remand warrants relief. Thus, we reverse and remand solely on that issue.

I.

Scott Leslie Carmell was convicted of fifteen counts of sexual offenses committed against his step-daughter—eight counts of indecency with a child, five counts of sexual assault, and two counts of aggravated sexual assault.[1] Carmell appealed, arguing, inter alia, that four of his fifteen convictions were obtained without sufficient evidence. See Carmell v. State (Carmell I), 963 S.W.2d 833, 835–36 (Tex. App.—Fort Worth 1998, pet. ref'd). Carmell's argument rested on article 38.07 of the Texas Code of Criminal Procedure, which, prior to a 1993 amendment, allowed convictions for indecency with a child and sexual assault to be supported by "the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within six months after the date on which the offense is alleged to have occurred." TEX. CODE CRIM. PROC. ANN. art. 38.07 (Vernon 1992) (emphasis added). The pre-1993 statute further provided that "[t]he requirement that the victim inform another person of an alleged offense does not apply if the victim was younger than 14 years of age at the time of the alleged offense." Id.

Carmell argued that under this statute one of his sexual assault convictions, Count 7, and three of his indecency convictions, Counts 8 through 10, were based on insufficient evidence because they rested only on the uncorroborated testimony of the victim who had failed to make a timely outcry. See Carmell I, 963 S.W.2d at 836. At the time that the sexual conduct

---

[1] Carmell was sentenced to a twenty-year term of imprisonment on each of the indecency and sexual assault convictions, and he was sentenced to two terms of life imprisonment for the aggravated sexual assault convictions, with all fifteen prison terms to run concurrently.

underlying the four convictions occurred, Carmell's victim was over fourteen years of age, yet she waited more than a year to reveal to her mother what had happened. Consequently, her outcry was not timely under the 1992 version of article 38.07.

The Texas Court of Appeals held that the 1993 version of article 38.07 applied to Carmell's convictions and rejected Carmell's insufficiency-of-the-evidence claim. Id. The amended version of the statute raised the age of victims who were not required to make a timely outcry from "younger than 14" to "younger than 18" years of age. Act of May 10, 1993, 1993 Tex. Sess. Law Serv. ch. 200, 389 (West) (codified as amended at TEX. CODE CRIM. P. ANN. art. 38.07 (Vernon 1993)). Despite the fact that the amended statute took effect after the offense conduct occurred, the Texas Court of Appeals found that it applied to Carmell's case because it was merely "a rule of procedure." Carmell I, 963 S.W.2d at 836. As the victim was younger than eighteen years old when the conduct alleged in Counts 7 through 10 occurred, there was no corroboration-or-outcry requirement under article 38.07, as amended, so the Texas Court of Appeals affirmed Carmell's convictions. Id. Carmell's petition for discretionary review was refused by the Texas Court of Criminal Appeals (the "TCCA").

The United States Supreme Court granted certiorari and reversed Carmell's convictions on Counts 7 through 10. See Carmell v. Texas (Carmell II), 529 U.S. 513, 552–53 (2000). The Court compared the 1993 amended version of article 38.07, which was applied by the Texas Court of Appeals in Carmell's case, with the earlier version that required, for conviction, corroborating evidence or outcry within six months if the victim was over fourteen years old, and concluded that the amended version changed the quantum of evidence necessary to sustain a conviction. Id. at 530. Thus, because Carmell committed the offenses charged in Counts 7 through 10 before the effective date of the 1993 amendment and his victim was over fourteen years of age at the time of the offenses, the Supreme

Court held that Carmell's convictions on those four counts, "insofar as they are not corroborated by other evidence," violated the constitutional prohibition on ex post facto laws and could not stand. Id. at 552. The Court reversed the judgment of the Texas Court of Appeals and remanded for further proceedings not inconsistent with the Court's opinion. Id. at 553.

Three days after the Supreme Court issued its decision, the Texas Court of Appeals recalled its mandate, and Carmell requested appointment of counsel on remand. By order issued on June 14, 2000, the Texas Court of Appeals granted Carmell's request by abating the appeal and remanding the case to the trial court for the appointment of counsel by June 27, 2000. The order also provided for the automatic reinstatement of the appeal upon receipt of the supplemental record. On June 21, 2000, the trial court appointed Tom Whitlock to represent Carmell.

On June 26, 2000, the Texas Court of Appeals received the trial court's supplemental record reflecting the appointment of Whitlock. At that point, the appeal having been automatically reinstated and submitted to a panel, the State of Texas filed a motion requesting leave to file a supplemental brief. The State argued that "the opinion on remand raised a new issue that the State did not have an opportunity to brief," namely, whether there was sufficient corroborating evidence adduced at trial to sustain the conviction under the 1992 version of article 38.07. The Texas Court of Appeals granted the motion, and the State filed its supplemental brief on July 24, 2000.

On July 5, 2000, Carmell drafted a letter to Whitlock which set forth certain expectations Carmell had of the representation. These expectations included: maintaining confidentiality and the attorney-client privilege; communicating with Carmell in a timely and direct manner; being willing to file a brief in excess of the 50-page limit as well as a reply to the State's brief; requesting oral argument; obtaining records still in the custody of trial counsel;

and obtaining Carmell's approval before filing any briefs. Carmell concluded his list of expectations with a conditional request: "If you do not have the time, interest, or orientation to work with me according to the things contained herein, then I respectful[ly] ask you [to] file a Motion to Withdraw and a Motion to Appoint Appellate Counsel." The letter also contained a post-script reading: "Do whatever it takes to win. Or, get me another attorney." Despite the overtone of an ultimatum, Carmell apparently did not assume that this language would deter Whitlock from representing him because he concluded the letter by saying: "I am looking forward to a phone call (or a visit) in the immediate future."

After receiving this correspondence from Carmell, Whitlock determined that he would not be able to provide satisfactory representation to Carmell. Whitlock filed a motion for leave to withdraw in the trial court on July 24, 2000—the same day that the State filed its supplemental brief. The trial court granted the motion and substituted Jack McKeathen as Carmell's counsel on July 24, 2000. The Texas Court of Appeals received notice of the substitution of counsel on July 26, 2000, as well as another supplemental record documenting the substitution of counsel in the trial court shortly thereafter. About three weeks later, on August 17, 2000, the Texas Court of Appeals issued its opinion in the case. Carmell v. State (Carmell III), 26 S.W.3d 726 (Tex. App.—Fort Worth 2000, pet. ref'd). After a de novo review of the trial record, applying the 1992 version of the statute, the Texas Court of Appeals concluded that the victim's testimony was sufficiently corroborated at trial and affirmed Carmell's convictions. Id. at 727–28. The next day, Carmell's new attorney, McKeathen, sought leave to file a supplemental brief and requested that the court delay the release of its opinion. In his motion, McKeathen explained that he was not informed of his appointment as Carmell's attorney until July 28, 2000, and further certified that the State had no objection to the motion. However, on

August 21, 2000, the Texas Court of Appeals denied McKeathen's request as moot.

On August 22, 2000, Carmell filed a pro se motion in the Texas Court of Appeals seeking the dismissal of McKeathen and the appointment of new counsel based on the complete lack of communication from McKeathen regarding the status of his case on remand. His motion was denied. McKeathen then moved for rehearing, to have the court's opinion withdrawn, and for leave to file a supplemental brief. But, once again, the Texas Court of Appeals denied the motions. Thus, no brief was ever filed by, or on behalf of, Carmell during the appellate proceedings on remand. Subsequently, the TCCA refused Carmell's petition for discretionary review, and the Supreme Court denied his petition for writ of certiorari.

Carmell sought state habeas relief in fifteen separate applications (one for each of his convictions), arguing, in relevant part, that he was denied effective assistance of counsel during his appellate proceedings on remand from the Supreme Court, and that his constitutional rights were infringed by the Texas Court of Appeals' decision to affirm his convictions again on remand. All fifteen applications were denied without written order on November 13, 2002.

Having exhausted his state court remedies, Carmell timely filed the instant 28 U.S.C. § 2254 habeas petition on December 18, 2002. As he had in his state habeas applications, Carmell argued that he was denied effective assistance of appellate counsel in the Texas Court of Appeals upon remand from the United States Supreme Court, and that the Texas Court of Appeals violated his constitutional rights by refusing to follow the Supreme Court's mandate. On January 17, 2006, a magistrate judge (the "MJ") recommended that all of Carmell's claims be denied on the merits. Carmell objected to the MJ's report and recommendation, but the district court overruled those objections and adopted the MJ's report and recommendation in an order dated March 6, 2006.

That same day, the district court entered its final judgment denying Carmell's petition. Carmell timely filed a notice of appeal and sought a certificate of appealability ("COA") and leave to proceed in forma pauperis ("IFP"). The district court granted Carmell IFP status but denied him a COA. Subsequently, this court granted Carmell a COA solely on the following two issues: (1) whether the Texas Court of Appeals' ruling on remand from the United States Supreme Court violated Carmell's constitutional rights by considering whether there was other evidence of Carmell's guilt in the trial record that corroborated the victim's testimony; and (2) whether Carmell was denied effective assistance of appellate counsel on remand.

## II.

"In an appeal from the denial of habeas relief, we review a district court's findings of fact for clear error and its legal determinations de novo." Bosley v. Cain, 409 F.3d 657, 662 (5th Cir. 2005). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a district court considering a § 2254 habeas petition to defer to the state court's adjudication on the merits of the petitioner's claims unless the state court's adjudication resulted in a decision that was: "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court"; or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d); see also Miniel v. Cockrell, 339 F.3d 331, 336–37 (5th Cir. 2003). "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." Miniel, 339 F.3d at 336 (citation omitted). "A state court's decision constitutes an unreasonable application of clearly established federal law if it is objectively unreasonable." Id. (citation omitted).

In this case, Carmell's post-conviction proceedings in state court resulted in denials without written order by the TCCA. These denials were nevertheless "on the merits." See Bledsue v. Johnson, 188 F.3d 250, 256–57 & n.13 (5th Cir. 1999) (citing Ex parte Thomas, 953 S.W.2d 286, 288–89 (Tex. Crim. App. 1997)). Thus, the TCCA's denial of Carmell's claims is entitled to deference under AEDPA, with the unreasonable-application inquiry for each claim focusing on the TCCA's ultimate legal conclusion, not its reasoning. See Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002).

## A.

Carmell challenges the district court's rejection of his claim that the decision to affirm his convictions on Counts 7 through 10 on remand violated his constitutional rights. Carmell argues that the Texas Court of Appeals acted in contravention of the Supreme Court's mandate by reviewing the record to find evidence corroborating the victim's testimony even though, he contends, the Supreme Court had already determined that the evidence was legally insufficient to sustain those convictions. Thus, according to Carmell, the Texas Court of Appeals' error in implementing the mandate on remand violated not only the Supremacy Clause, see U.S. CONST. art. VI, cl. 2; Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304 (1816),[2] but also his due process rights when "the State [was allowed] to resurrect the corroboration issue."[3] As we see Carmell's

---

[2] The Supremacy Clause is not a source of federal rights. Instead, it operates to "secure federal rights by according them priority whenever they come in conflict with state law." Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 613 (1979) (internal quotation omitted).

[3] We note that Carmell does not make a direct challenge to the legal sufficiency of the corroborating evidence adduced at trial under Jackson v. Virginia, 443 U.S. 307 (1979). Rather, his due process claim apparently stems from a criminal defendant's guarantee under the Fourteenth Amendment that on a first appeal, as of right, the state court's actions will comport with fair procedure. See Evitts v. Lucey, 469 U.S. 387, 393 (1985) (explaining that states' procedures for deciding criminal appeals as of right are subject to the demands of due process in that they must provide for an adequate, effective, and fair appeal); see also Griffin

mandate argument, the Supreme Court's holding in Carmell II was based on a violation of the Ex Post Facto Clause, and were Carmell to be held in violation of the Court's mandate (as he argues), the violation of the Ex Post Facto Clause would be ongoing.

It has long been established that inferior state courts are obligated to enforce the Supreme Court's mandate on remand. See Briggs v. Pennsylvania R.R. Co., 334 U.S. 304, 306 (1948); 28 U.S.C. § 1257(a).[4] That is to say that once a case has been decided by the Supreme Court on appeal and remanded to the court below, "[w]hatever was before the Court and is disposed of, is considered finally settled. The inferior court is bound by the decree, as the law of the case; and must carry it into execution according to the mandate . . . ." Ex Parte Sibbald v. United States, 37 U.S. (12 Pet.) 488, 492 (1838); see Vendo v. Lektro-Vend Corp., 434 U.S. 425, 427–28 (1978); In re Sanford Fork & Tool Co., 160 U.S. 247, 255 (1895); see also United States v. Becerra, 155 F.3d 740, 753 (5th Cir. 1998) ("[A] lower court on remand must implement both the letter and the spirit of the [appellate court's] mandate, and may not disregard the explicit directives of that court." (second alteration in original) (citation and internal quotation marks omitted)), abrogated on other grounds as recognized in United States v. Farias, 481 F.3d 289, 291–92 (5th Cir. 2007). However, "[w]hile a

v. Illinois, 351 U.S. 12, 19–20 (1956) (imposing constitutional constraints on states when they choose to create appellate review). Along those lines, Carmell urges that "[j]ustice . . . cannot be secured" when an inferior court, the Texas Court of Appeals here, "refuses to honor the decision of the United States Supreme Court," the final arbiter of the matter.

[4] See also Hunter's Lessee, 14 U.S. (1 Wheat.) at 351–52 ("It is an historical fact, that the [S]upreme [C]ourt of the United States have, from time to time, sustained this appellate jurisdiction [over state courts] in a great variety of cases, brought from the tribunals of many of the most important states in the union, and that no state tribunal has ever breathed a judicial doubt on the subject, or declined to obey the mandate of the [S]upreme [C]ourt . . . . This weight of contemporaneous exposition by all parties, this acquiescence of enlightened state courts, and these judicial decisions of the [S]upreme [C]ourt through so long a period, do, as we think, place the doctrine upon a foundation of authority which cannot be shaken . . . .").

mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues." Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979) (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939)). Therefore, to determine whether the Supreme Court's mandate was not followed in Carmell III, we must carefully examine the issues that were actually decided by the Supreme Court in Carmell II as well as the Court's final directive in that case. See Kansas City S. Ry. Co. v. Guardian Trust Co., 281 U.S. 1, 10 (1930) ("For the proper construction of the decree under consideration, regard is to be had to the issues before the court on appeal, the findings applied for and the directions given.").

To begin, in support of his construction, Carmell cites to several places in Carmell II where he claims that the Court suggested that the evidence of corroboration was insufficient. See, e.g., 529 U.S. at 530 ("[P]etitioner could be (and was) convicted on the victim's testimony alone, without any corroborating evidence."); id. at 531 ("Texas' retrospective application of the amendment to [a]rticle 38.07 permitted petitioner to be convicted with less than the previously required quantum of evidence."). However, these snippets from the majority opinion were preceded by footnote four, explaining in relevant part that:

> The State argues that there is evidence corroborating the victim's testimony, so it does not help petitioner even if the old law applies. Before the state court, however, petitioner argued that "there was nothing to corroborate [the victim's] version of events," . . . and that court accepted the contention as correct for the purposes of its decision. We do the same here.

Carmell II, 529 U.S. at 519 n.4 (emphasis added) (internal citations omitted). The most plausible reading of this passage is that the Court only assumed a lack of corroborating evidence, arguendo, in order to reach the ex post facto question. Such assumptions are not part of the mandate and, as such, do not constrain the lower court on remand. See WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND

PROCEDURE: JURISDICTION 2d § 4478.3, at 757 (2002) ("A mere recital of matters assumed for purposes of decision and dicta are not part of the mandate." (emphasis added)); United States v. Uccio, 940 F.2d 753, 757–58 (2d Cir. 1991) (explaining that the passage in the court of appeals' opinion that simply stated the position taken by the district court before the appeal was not a ruling on the issue and did not establish the law of the case). Thus, the Court's later references to insufficient corroboration neither explicitly nor implicitly disposed of the issue.

Further support for this interpretation is found in Justice Ginsburg's dissent in Carmell II. Cf. Harris v. Sentry Title Co., 806 F.2d 1278, 1280–81 (5th Cir. 1987) (relying, in part, on the dissent in the prior appeal to determine the scope of the court's mandate). In particular, the dissent cites the majority opinion's footnote four, noting:

> The Texas Court of Appeals did not rule on whether the State in fact did corroborate [the victim's] testimony at trial. I note the testimony of [the victim's] mother that when she visited Carmell in jail and told him he needed to confess if he was sorry for what he had done, he wrote "'adultery with [the victim]'" on a piece of paper. [Carmel I,] 963 S.W.2d at 835. That testimony might count as corroboration. Because this question is outside the grant of certiorari, I (like the Court, see ante, at [519] n.4) do not further address it."

Carmell II, 529 U.S. at 555 n.2 (Ginsburg, J., dissenting) (emphasis added). Additionally, it is key that the majority opinion's ultimate holding was open-ended—"we hold that petitioner's convictions on [C]ounts 7 through 10, insofar as they are not corroborated by other evidence, cannot be sustained under the Ex Post Facto Clause"—and instructed that "the judgment of the Texas Court of Appeals is reversed, and the case is remanded for further proceedings not inconsistent with this opinion." Id. at 552–53 (emphasis added). Taken as a whole, it is clear that the Supreme Court in fact neither considered nor decided

(even implicitly) the issue of corroboration, and thus the Texas Court of Appeals decision to visit the issue of corroboration on remand was not inconsistent with the Supreme Court's mandate.[5]

Additionally, we find unpersuasive Carmell's citations to decisions from other courts construing his victory in Carmell II to suggest that a different outcome should have resulted on remand in Carmell III. See, e.g., Hameen v. Delaware, 212 F.3d 226, 241–42 (3d Cir. 2000) ("[The Carmell II Court] held that the 1993 amendment to the Texas law was ex post facto as applied to [Carmell] because it reduced the 'quantum of evidence' necessary to convict [Carmell] inasmuch as without the amendment he could not have been convicted on the counts in question."); McColloch v. State, 39 S.W.3d 678, 683 (Tex. App.—Beaumont 2001, pet. ref'd). Those opinions only invoked Carmell II for its ex post facto analysis. They neither conducted a searching review of the case nor ascertained the exact scope of the mandate. For those courts' purposes, it was sufficient to present the underlying facts in Carmell II without explaining that the corroboration issue had yet to be decided in fact.

Carmell further argues that the Texas Court of Appeals determined in Carmell I that there was insufficient evidence to corroborate the victim's testimony, and, thus, that its subsequent decision on remand, Carmell III, also conflicted with the "law of the case." Carmell misreads the opinion of the Texas Court of Appeals in Carmell I, which only mentioned the issue of corroborating

---

[5] We also note that the Supreme Court, in reaching its conclusion that the Texas Court of Appeals' decision violated the Ex Post Facto Clause, stated the Texas rule that a "trial court's failure to comply with the requirements of [a]rticle 38.07 . . . results . . . in the reversal of conviction and remand for entry of an order of acquittal." Id. at 518 n.2. Because the sufficiency requirements of article 38.07 were not included in the jury instructions at trial and were first raised as an issue when Carmell appealed his convictions, the "trial court" did not "fail[ ] to comply with the requirements of [a]rticle 38.07." Id. Consequently, the improper application of the amended version of article 38.07 occurred in the Texas Court of Appeals in Carmell I and could be corrected on remand by applying the pre-amendment statute to the record evidence without transgressing the Supreme Court's mandate.

evidence in framing Carmell's argument. See Carmell I, 963 S.W.2d at 836 ("In his sixth point, appellant argues that he should be acquitted of one of the sexual assault convictions because [the victim] did not tell her mother about the abuse until 'years after the offense' and there was nothing to corroborate [the victim's] version of events." (emphasis added)). Thereafter, the Court dealt solely with the issue of which version of article 38.07 should apply—the ex post facto issue. See id.

In sum, we agree with the district court's decision to deny relief on this issue because we cannot say that the state habeas court's decision—an implied conclusion that Carmell III is not inconsistent with Carmell II—"was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## B.

Carmell also contends that he was denied effective assistance of appellate counsel in the Texas Court of Appeals during the continuation of his direct appeal proceedings on remand from the Supreme Court. As support, Carmell points to his first attorney's withdrawal from the case because of his "unwillingness to be a zealous advocate" and to his second attorney's failure to: "(1) file a brief, (2) file a responsive brief to the State's brief, (3) file a motion for extension of time to file a brief, and/or (4) request oral argument." Additionally, Carmell urges that both attorneys' alleged failures amounted to the constructive denial of any assistance on appeal requiring a presumption of prejudice. See Penson v. Ohio, 488 U.S. 75, 88 (1988). Alternatively, Carmell submits that prejudice exists because there is a reasonable probability that, but for counsels' deficient performance, Carmell would have prevailed on remand.

Before turning to the merits of Carmell's ineffective assistance of counsel claim, we first address a factual finding of the district court. In its answer to

Carmell's federal habeas petition, the State argued, very briefly, that Carmell could not allege that he received ineffective assistance of counsel when he requested that his counsel withdraw at a critical stage of the proceeding.[6] The MJ's report and recommendation, which was adopted by the district court, found that "counsel withdrew as counsel for Petitioner based upon Petitioner's own request" in the July 5, 2000 letter and that Carmell had failed to show deficient performance by virtue of that requested withdrawal.

The district court's determination that Carmell requested Whitlock to withdraw as counsel is a finding of fact that is reviewed for clear error. Bosley, 409 F.3d at 662. For the reasons stated below, we conclude that the district court's finding that Carmell requested Whitlock to withdraw is clearly erroneous.

Whitlock's motion to withdraw as counsel states that he withdrew because he "could not meet certain criteria set out in writing by [Carmell]." The criteria set forth in the letter, detailed supra in Part I, do not exceed reasonable expectations of competent representation. Confidentiality, communication, and collaboration are essential to all representations and are neither excessive nor unreasonable demands to make upon counsel. Carmell's post-script to "do whatever it takes to win[, o]r get me another attorney" was not a directive requiring Whitlock to withdraw. Indeed, Carmell's letter concluded with the statement that he was looking forward to a phone call or visit from Whitlock.

---

[6] In the State's appellate brief, its argument in the district court has morphed into two more complicated legal arguments: (1) the invited error doctrine estops Carmell from claiming ineffective assistance of counsel because he terminated Whitlock's representation; and (2) Carmell waived his right to counsel by insisting upon his choice of counsel at a critical stage of the proceedings. We do not address arguments raised for the first time on appeal. Instead, we will address the argument which the State made to the district court and formed the basis for the district court's finding of fact (and ensuing legal conclusion). We note, however, that the state trial court obviously did not conclude that Carmell waived his right to counsel based upon the letter because it simultaneously appointed McKeathen when it allowed Whitlock to withdraw as counsel.

In sum, Carmell's letter was merely an expression of an earnest desire to have competent, dedicated representation during the remand proceedings. Only Whitlock was in a position to determine if he had sufficient time and resources to provide Carmell with the quality of representation described in the letter. Whitlock made this determination unilaterally and had no contact with Carmell regarding the decision to withdraw. Therefore, we conclude that the district court erred when it found Carmell requested Whitlock to withdraw.

We next turn to the substance of Carmell's ineffective assistance of counsel claim. After the district court faulted Carmell for the ill-timed substitution of counsel, it apparently failed to consider Carmell's argument that his second attorney, McKeathen, rendered constitutionally ineffective assistance of counsel by failing to file any brief or motion for extension of time before the Texas Court of Appeals.

A criminal defendant has a constitutional right to the effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 397 (1985). Because an appellant after remand "stands in the same position" under Texas law as when the initial appeal was filed, Theus v. State, 863 S.W.2d 489, 491 (Tex. Crim. App. 1993) (en banc), this constitutional guarantee extends to the remand proceedings here. Ordinarily, to prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 689–94 (1984). To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. However, "[i]n certain Sixth Amendment contexts, prejudice is presumed." Id. at 692. One such context includes the "[a]ctual or constructive denial of the assistance of counsel altogether." Id.; Penson, 488 U.S. at 88.

Carmell contends that the circumstances of his appointment of counsel rendered it a "mere formal appointment" and the proceedings on remand a "meaningless ritual." Consequently, he argues that prejudice should be presumed, as it was in Penson.

In Penson, the petitioner's appellate counsel filed a document captioned "Certification of Meritless Appeal and Motion," failing to draw attention to anything that might arguably support the appeal as suggested by the Court in Anders v. Califonia,[7] and moved the court to allow him to withdraw as appellate counsel. 488 U.S. at 77–78. The state appellate court granted the counsel's motion to withdraw before its own examination of the record. Id. at 78. Some time later, the state court reviewed the case and found that the record supported several arguably meritorious grounds for reversal of the petitioner's conviction and modification of his sentence. Id. at 81. Nevertheless, it did not appoint new counsel. Id. The Supreme Court held that the state appellate court had erred when it failed to appoint new counsel once it had determined that the record supported several arguable claims. Id. at 83–84. Because this left the petitioner "entirely without the assistance of counsel on appeal," the Court presumed prejudice. Id. at 88–89.

In the more recent case of Smith v. Robbins, 528 U.S. 259 (2000), the Court further explained the scope of its holding in Penson. Namely, in Penson the Court "distinguished denial of counsel altogether on appeal, which warrants a presumption of prejudice, from mere ineffective assistance of counsel on appeal, which does not." Id. at 286. In Robbins, the Court concluded that because the defendant there "ha[d] received appellate counsel who ha[d]

---

[7] 386 U.S. 738, 744 (1967) (holding that a criminal appellant may not be denied representation on appeal based on appointed counsel's bare assertion that he or she is of the opinion that there is no merit to the appeal and thus providing a prophylactic procedure under such circumstances, requiring a "conscientious examination" of the case and a "brief referring to anything in the record that might arguably support the appeal").

complied with a valid state procedure for determining whether the defendant's appeal [was] frivolous, and the State ha[d] not at any time left the defendant without counsel on appeal, there [was] no reason to presume that the defendant had been prejudiced." Id. (emphasis added).[8] The Robbins Court reiterated that while a "strong presumption of reliability" normally applies to judicial proceedings, "when, as in Penson, there has been a complete denial of counsel, [courts] understandably presume the opposite." Id.

Here, Carmell contends that because his first attorney withdrew and no brief was ever filed on his behalf during his appeal proceedings on remand, his situation is similar to that of the petitioner in Penson. However, the facts presented in Penson were more egregious than those in this case in that in Penson the state appellate court chose not to appoint new counsel even after it discovered arguable merit in the petitioner's appeal. Those facts stand in stark contrast to the Texas trial court's decision here to appoint new counsel the same day that Carmell's first attorney on remand was permitted to withdraw. As such, Carmell, unlike the petitioner in Penson, was never actually denied counsel at a critical stage of his appeal on remand. See Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000) ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage. The same is true on appeal." (citations and internal quotation marks omitted)).

Of course, the "complete denial of counsel,"—when counsel is either totally absent or prevented from assisting the accused during a critical stage of a proceeding—is not the only situation in which prejudice is presumed. Wright v.

---

[8] The Court's holding in Robbins stemmed, at least in part, from federalism and separation-of-powers concerns raised by the prospect of the federal judiciary dictating specific details of an Anders process to states, rather than leaving the "challenging task of crafting appropriate procedures . . . to the laboratory of the States in the first instance." Id. at 275 (alteration in original) (citation and internal quotation marks omitted).

Van Patten, --- U.S. ---, 128 S. Ct. 743, 746 (2008) (citation omitted). In United States v. Cronic, 466 U.S. 648, 658 (1984), the Supreme Court recognized two additional situations in which a Sixth Amendment violation may be found "without inquiring into counsel's actual performance or requiring the defendant to show the effect it had" on the proceeding. Bell v. Cone, 535 U.S. 685, 695 (2002). They include: "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not"; and, most relevant here, where a petitioner is represented by counsel, but his or her "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Id. at 696 (emphasis added) (citation omitted); see Cronic, 466 U.S. at 656 ("The right to effective assistance of counsel is . . . the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing."). With respect to the latter category of cases, the Court has clearly indicated that the attorney's failure to test the prosecution's case must be complete in order to presume prejudice. Cone, 535 U.S. at 697; see also Haynes v. Cain, 298 F.3d 375, 381 (5th Cir. 2002) (en banc) (reinforcing the notion that defense counsel must entirely fail to subject the prosecution's case to meaningful adversarial testing for the Cronic exception to apply).

Here, Carmell's attorneys completely failed to challenge the State's case during remand proceedings in the Texas Court of Appeals. Specifically, Carmell's first court-appointed attorney on remand, Whitlock, failed to discuss the case with him. And, Carmell's second court-appointed attorney, McKeathen, failed to check with Whitlock, the State's attorney, or the court in order to determine the status of the case before the Texas Court of Appeals' judgment was issued; failed to file a timely motion for leave to file a supplemental brief or for extension of time; and ultimately failed to file a brief in the Texas Court of Appeals responding to the State's arguments. Without any brief filed on his behalf, Carmell was deprived of his right to challenge the State's

characterization of the trial evidence and the legal theory upon which the Texas Court of Appeals searched the record de novo for corroboration of the victim's testimony. In addition, McKeathen never notified Carmell of his appointment as attorney of record, thereby leaving Carmell entirely unaware of what was occurring in the appeal process. These aggregated errors undermined the reliability of the process. And, they are of sufficient magnitude to warrant the presumption of prejudice and for us to conclude that Carmell's constitutional right to the effective assistance of counsel on appeal (after remand) was violated.

Therefore, we conclude that, in light of the complete lack of an adversarial testing of issues stemming from the Supreme Court's remand order, the state habeas court's denial of relief on Carmell's ineffective assistance of counsel claim was an objectively unreasonable application of the Supreme Court's clearly established Sixth Amendment jurisprudence. See Neal, 286 F.3d at 236 (analyzing an ineffective assistance of counsel claim under the "unreasonable application" standard of § 2254(d)(1)). As such, the district court erred in denying Carmell federal habeas relief.

## III.

For the foregoing reasons, we AFFIRM the district court's denial of relief based on the alleged failure of the Texas Court of Appeals to follow the Supreme Court's mandate. But, with respect to Carmell's ineffective assistance of appellate counsel claim on remand, we REVERSE the district court's judgment denying habeas relief and REMAND the case to the district court for entry of judgment granting habeas relief on Counts 7 through 10, unless the state affords Carmell an out-of-time appeal in the Texas Court of Appeals, with the assistance of counsel, within such reasonable time as the district court may fix.